Filed 6/25/15  Shaoxing City etc. Products v. Landsberg & Associates CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| SHAOXING CITY MAOLONG WUZHONG DOWN PRODUCTS, LTD et al.,<br><br>Plaintiffs and Appellants,<br><br>v.<br><br>LANDSBERG & ASSOCIATES et al.,<br><br>Defendants and Respondents. | B257823<br><br>(Los Angeles County<br>Super. Ct. No. BC455229) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Rolf M. Treu, Judge.  Affirmed.

Timothy D. McGonigle for Plaintiffs and Appellants.

Gordon & Rees, David L. Jones, Christopher R. Wagner and A. Louis Dorny for Defendants and Respondents.

\* \* \* \* \* \*

A creditor retained a second set of attorneys to represent it in a bankruptcy proceeding after its first set of attorneys missed a deadline to challenge a different creditor's lien. While represented by the second set of attorneys, the creditor mediated the dispute with the debtor and settled for less than the full amount of its debt. The creditor then sued the second set of attorneys for malpractice. The trial court granted summary judgment to the attorneys, concluding that the mediation confidentiality statutes, Evidence Code section 1115 et seq.,[1] prevented the creditor from proving that the attorneys' alleged malpractice caused the settlement to be far less than the full amount of the debt. We conclude this was correct, and affirm.

## FACTUAL AND PROCEDURAL HISTORY

An arbitrator determined that plaintiffs Shaoxing City Maolong Wuzhong Down Products, Ltd. (Shaoxing) and Shui Yan Cheng's (Cheng) (collectively, plaintiffs) were entitled to a total of $5.35 million from Aeolus Down, Inc. (Aeolus), Wei Xu, and Wei Dong (collectively, debtors). After the arbitrator issued its tentative ruling but before plaintiffs obtained a judgment confirming the arbitration award, Aeolus entered into a security agreement with Zhejiang Hengdi Bedding Co., Ltd. and Zhejiang Liuqiao Feather Co., Inc. (collectively, Zhejiang), and Zhejiang filed a blanket lien attaching to all of Aeolus's assets.

Soon after plaintiffs obtained the judgment, debtors filed for bankruptcy. Plaintiffs hired defendants Keehn & Associates, and L. Scott Keehn (collectively, Keehn) as counsel in order to obtain discovery and challenge Zhejiang's lien as a fraudulent transfer. After Keehn missed the deadline without obtaining any discovery or challenging Zhejiang's lien, plaintiffs retained Landsberg and Associates and Ian Landsberg (collectively, Landsberg) and officially substituted Landsberg for Keehn as their bankruptcy counsel. With Landsberg as counsel of record, plaintiffs engaged in

---

[1]    All further statutory references are to the Evidence Code unless otherwise indicated.

2

mediation with debtors and, on February 22, 2010, ultimately agreed to accept $3.75 million—$1.6 million less than the arbitration award.

On February 18, 2011, plaintiffs sued Keehn and Landsberg for malpractice. Each set of defendants moved for summary judgment, and the trial court granted those motions.[2] With respect to Landsberg, the trial court ruled that California's mediation confidentiality statutes, section 1115 et seq., barred plaintiffs' malpractice claim because they (1) rendered inadmissible the evidence plaintiffs would need to prove a causal link between Landsberg's alleged negligence and harm to plaintiffs arising from the lower settlement amount, and (2) made it impossible for Landsberg "to effectively defend against plaintiffs' malpractice claim."

Plaintiffs timely appeal.

## DISCUSSION

We independently review whether the trial court properly granted summary judgment due to the absence of any triable issue of material fact. (Code Civ. Proc., § 473c.) In doing so we liberally construe the evidence in support of the party opposing the motion, and resolve doubts against summary judgment and in favor of trial. (*Ibid.*; *Mt. Hawley Insurance Company v. Lopez* (2013) 215 Cal.App.4th 1385, 1393-1394.)

Among other things, California's mediation confidentiality statutes provide that "[n]o evidence of anything said or any admission made for the purpose of, in the course of, or pursuant to, a mediation . . . is admissible or subject to discovery . . . ." (§ 1119, subd. (a).) This prohibition reaches "[a]ll communications, negotiations or settlement discussions by and between participants in the course of a mediation . . ." (§ 1119, subd. (c)). Consistent with its purpose of "encourag[ing] mediation by permitting the parties to frankly exchange views[] without fear that disclosures might be used against them in later proceedings" (*Fair v. Bakhtiari* (2006) 40 Cal.4th 189, 194), the mediation

---

**2**    Plaintiffs separately appealed the order granting summary judgment for Keehn. See B256988.

3

confidentiality statutes are to be read "broadly" (*Simmons v. Ghaderi* (2008) 44 Cal.4th 570, 580), and are to be "strictly enforced" (*Cassel v. Superior Court* (2011) 51 Cal.4th 113, 127 (*Cassel*)).  Exceptions to this confidentiality are enumerated by statute; courts may not carve out new exceptions unless (1) "due process is implicated" or (2) "literal construction would produce absurd results" and thereby "violat[e] the Legislature's presumed intent."  (*Id.* at p. 124.)

Because the mediation confidentiality statutes apply to communications between a client and his attorney (*Cassel*, *supra*, 51 Cal.4th at pp. 119, 137), they can render confidential the statements that form the very basis for a client's claim for malpractice against that attorney.  (*Id.* at p. 122 ["Applying the mediation confidentiality statutes . . . to protect . . . mediation-related discussion between a mediation disputant and the disputant's attorneys may indeed hinder the client's ability to prove a legal malpractice claim against the lawyers."]; *Wimsatt v. Superior Court* (2007) 152 Cal.App.4th 137, 163 [same] (*Wimsatt*).)  What is more, "the mediation confidentiality statutes include no exception for legal malpractice actions by mediation disputants against their own counsel" (*Cassel*, at p. 132), and the absence of any such exception does not implicate due process or lead to an absurd result (*id.* at p. 119).  The net effect is that "when clients . . . participate in mediation, they are, in effect, relinquishing all claims for new and independent torts arising from mediation, including legal malpractice causes of action against their own counsel."  (*Wimsatt*, at p. 163; *Amis v. Greenberg Traurig, LLP* (2015) 235 Cal.App.4th 331, 340 ["'[M]ediation confidentiality was never intended to protect attorneys from malpractice claims'; however . . . that seemingly unintended consequence is for the Legislature, not the courts, to correct."], quoting *Wimsatt*, at p. 164 (*Amis*).)

To prove their claim for legal malpractice, plaintiffs must establish "(1) the existence of the duty of the professional to use such skill, prudence, and diligence as other members of the profession commonly possess and exercise; (2) breach of that duty; (3) *a causal connection between the negligent conduct and the resulting injury*; and (4) actual loss or damage resulting from the professional negligence."  (*Oasis West Realty LLC v. Goldman* (2011) 51 Cal.4th 811, 821, italics added.)  To show causation "[i]n a

4

litigation malpractice case, the plaintiff must establish that *but for* the alleged negligence of the defendant attorney, the plaintiff would have obtained a more favorable judgment or settlement in the action in which the malpractice allegedly occurred." (*Viner v. Sweet* (2003) 30 Cal.4th 1232, 1241.)

Although, as plaintiffs argue, the mediation confidentiality statutes do not reach Landsberg's premediation promises regarding what it would accomplish during its representation or its postmediation admission that it could have obtained a better settlement had Keehn not done such a poor job challenging Zhejiang's lien, those statements pertain to Landsberg's professional duty and its breach of that duty. But the requisite "causal connection" between Landsberg's breach and the alleged injury of a reduced settlement amount depend on *why* plaintiffs accepted the smaller settlement. The decision to settle "involves a wide spectrum of considerations" (*Barnard v. Langer* (2003) 109 Cal.App.4th 1453, 1461, fn. 13), and the only way to prove whether Landsberg's poor representation was the reason why plaintiffs accepted the reduced settlement—rather than some other consideration—is to know what happened (and, more to the point, what was said) during the mediation. But that is precisely what the mediation confidentiality statutes preclude plaintiffs from offering into evidence. (Accord, *Amis*, *supra*, 235 Cal.App.4th at p. 340 [affirming summary judgment in lawyer's favor in a malpractice case because plaintiff "cannot prove that any act or omission by [the lawyer] caused him to enter the settlement agreement and, hence, to suffer his alleged injuries, because all communications he had with [the lawyer] regarding the settlement agreement occurred in the context of mediation."].)

Plaintiffs level three challenges at this outcome.[3] First, they fault the trial court for relying in part on how the mediation confidentiality statutes would rob *Landsberg* of its

---

[3]    Landsberg also argued to the trial court, and now argues on appeal, that Shoaxing is barred from pursuing their malpractice claim because it is a suspended California corporation. We grant plaintiffs' motion for judicial notice of the Secretary of State's records indicating that as of April 30, 2015, Shaoxing is not suspended (§§ 459, 452,

ability to defend against plaintiffs' action. To begin, this was an alternative rationale that in no way affects our analysis of how the mediation confidentiality statutes also preclude plaintiffs from prosecuting their case. The trial court was correct to rely on this concern in any event. That is because courts are reluctant to allow a lawsuit to proceed when the plaintiff can use mediation confidentiality to prevent a defendant from eliciting statements necessary to respond to the plaintiff's claims or to put the plaintiff's nonconfidential evidence in proper context. (*Amis*, *supra*, 235 Cal.App.4th at p. 342; accord, *Cassel*, *supra*, 51 Cal.4th at p. 136 [noting unfairness of "allow[ing] a client to support a malpractice claim with excerpts from private discussions with counsel concerning the mediation, while barring the attorneys from placing such discussions in context by citing communications within the mediation proceedings themselves"]; *Solin v. O'Melveny & Myers* (2001) 89 Cal.App.4th 451, 463 [plaintiff in malpractice suit cannot use attorney-client privilege as a "sword" by precluding attorney from presenting client confidences in defense].) Plaintiffs respond that their use of mediation confidentiality as a sword does not violate Landsberg's due process rights and, as we noted above, only violations of due process warrant the creation of new exceptions to the mediation confidentiality statutes. This is unpersuasive; the threshold for recognizing new exceptions has nothing to do with the impropriety of using mediation confidentiality as a sword.

Second, plaintiffs argue that Landsberg has already expressly waived mediation confidentiality and might do so in the future. Plaintiffs assert that Landsberg previously waived the protection of the mediation confidentiality statutes when, after the mediation concluded, Landsberg told plaintiff Cheng and Landsberg's bankruptcy co-counsel that Keehn's failure to conduct discovery had hurt the negotiations. However, an express waiver is valid only if it is (1) in writing, or (2) oral, as long as it is recorded by a court reporter or audio recording while in front of the mediator, the parties all state the

subd. (c)), and reject this argument as moot. (See *Bourhis v. Lord* (2013) 56 Cal.4th 320, 325-328.)

agreement to waive is binding, and the oral statement is reduced to writing and signed within 72 hours thereafter. (§§ 1122, subd. (a), 1118.) Landsberg's statements do not meet these requirements. Plaintiffs further contend that they are willing to waive the mediation confidentiality statutes if Landsberg is also willing, but we are tasked with evaluating the propriety of summary judgment on the record before the trial court (*GuideOne Mutual Insurance Co. v. Utica National Insurance Group* (2013) 213 Cal.App.4th 1494, 1501), not based on what the parties might, but have yet to, do in the future.

Third, plaintiffs posit that the mediation confidentiality statutes do not apply at all because the mediation in this case was ordered by the bankruptcy court, and was consequently not voluntary. As a general matter, the applicability of these statutes is not contingent upon the mediation being voluntary. "Mediation" is defined as the "process in which a neutral person . . . facilitate[s] communication between the disputants to assist them in reaching a mutually acceptable agreement" (§ 1115, subd. (a)), and this definition is silent as to the mandatory or voluntary nature of the process. Although mandatory settlement conferences ordered by superior courts are excluded (§ 1117, subd. (b)(2); Cal. Rules of Court, rule 3.1380), that exception by its terms does not apply to mediations ordered by the courts of another sovereign. Even if it did, the disputed evidence is that the mediation was "voluntary"; that is what the Confidentiality Agreement signed by the parties stated. Plaintiffs argue that they have contrary evidence—namely, documents from the bankruptcy court and statements that Landsberg allegedly made to bankruptcy co-counsel and co-counsel's employee. But we declined plaintiffs' motion to judicially notice the bankruptcy court filings, and the trial court sustained evidentiary objections to the statements. Plaintiffs ask us to revisit and review the trial court's evidentiary rulings, but we conclude the trial court did not abuse its discretion in excluding this evidence. (*Natkin v. California Unemployment Ins. Appeals Bd.* (2013) 219 Cal.App.4th 997, 1002.) Landsberg's alleged statement to co-counsel's employee was relayed through co-counsel, and for that reason constitutes hearsay. Landsberg's alleged statement to co-counsel recounted by co-counsel himself is not hearsay, but was properly excluded

7

because the bankruptcy court order Landsberg referenced was never produced and its absence was never explained; as a result, plaintiffs did not comply with the secondary evidence rule.  (§§ 1521, 1523.)

We conclude that the mediation privilege bars plaintiffs' legal malpractice claim.

## DISPOSITION

The judgment is affirmed.  Landsberg is entitled to costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
                                                        HOFFSTADT

We concur:


_____, P. J.
            BOREN


_____, J.
            CHAVEZ

8